UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SOLOMON DACOSTA,

      Petitioner,

      v.                                                          CAUSE NO. 3:26cv264 DRL-SJF

BRIAN ENGLISH, Warden of Miami
Correctional Facility,

      Respondent.

OPINION AND ORDER

Immigration detainee Solomon Dacosta, a litigant without counsel, filed a petition

for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in

violation of the laws or Constitution of the United States.

Mr. Dacosta is citizen of Jamaica who has been living in the United States for a period

of years. He claims he arrived in 1992 on a visitor visa, but there is no record of this.[1] In July

2025, he was arrested by United States Immigration and Customs Enforcement (ICE) agents

in New York and removal proceedings were initiated against him [8-2.]. He was

subsequently transferred to Miami Correctional Facility, where he is being held pending the

conclusion of his removal proceedings. He argues that the agency's refusal to consider him

for bond violates applicable statutes and the Fifth Amendment's Due Process Clause

---

[1] Immigration records reflect that he was in the United States as of 2006, because he was arrested on
various charges in New Jersey between 2006 and 2007. He also was convicted in 2017 in New York
for domestic violence offenses [8-2].

because he is not a flight risk or a danger to the community. He seeks a custody redetermination hearing before an immigration judge or an order granting release.

In an order to show cause, the court directed the Warden to answer the petition in light of *De Jesús Aguilar v. English*, No. 3:25cv898 DRL-SJF, 2025 WL 3280219, 8 (N.D. Ind. Nov. 25, 2025), *appeal docketed*, No. 26-1145 (7th Cir. Jan. 26, 2026), which joined a large majority of other courts in concluding that § 1225(b)(2) does not apply to noncitizens when they are not "seeking admission" within the statute's meaning. *See also Singh v. English*, No. 3:25cv962, 2025 WL 3713715, 5 (N.D. Ind. Dec. 23, 2025) ("In short, under § 1225(b)(2), an alien must be an 'applicant for admission,' and the alien must be 'seeking admission,' and an examining immigration officer must determine that this alien 'is not clearly and beyond a doubt entitled to be admitted' for mandatory detention to occur under this subsection."). The Warden was instructed to address why this case differs from *Aguilar*, why the court should examine subject matter jurisdiction differently, and whether there is cause to address the outcome differently. That response has been filed, and Mr. Dacosta has filed a reply.

The Warden (through his federal counsel) repeats his arguments from *Aguilar* and other recent cases that the court lacks jurisdiction over the petition and that Mr. Dacosta's detention is authorized by § 1225(b)(2). These arguments were rejected in *Aguliar* and *Singh* (and other decisions). *See Singh v. English*, No. 3:25cv962, 2025 WL 3713715 (N.D. Ind. Dec. 23, 2025) (Leichty, J.); *see also Mejia Diaz v. Noem*, No. 3:25cv960, 2025 WL 3640419 (N.D. Ind. Dec. 16, 2025) (Brisco, J.). The court continues to be of the view that jurisdiction is secure insofar as this opinion goes, and that § 1225(b)(2) cannot reasonably be interpreted in the manner urged by the government.

Notably, the court of appeals recently held in deciding a motion for a stay pending appeal that the government was not likely to succeed on the merits of its argument that the mandatory detention provision contained in § 1225(b)(2) applies to individuals who are arrested in the interior of the United States. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025). Though preliminary, that opinion offers early echoes of what this court has done. The court also read the split decisions from the Fifth Circuit and Eighth Circuit. These opinions, together with others, illustrate just how complicated this patchwork of statutes is, but the court remains persuaded in its current course under *Aguilar* and *Singh* until guidance comes from this circuit.

That leads the court to 8 U.S.C. § 1226(a), the "default rule" for detention of noncitizens who are "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Under this statute, an alien may be arrested and detained while removal proceedings are pending, and the Attorney General "(1) may continue to detain the [noncitizen]; and (2) may release the [noncitizen] on (A) bond . . . or (B) conditional parole" until removal proceedings conclude. 8 U.S.C. § 1226(a). The court, as it always does, begins with the statute's plain language. It is permissive, not mandatory, and it affords an election (insofar as the limitations in § 1226(c) do not apply of course).

Mr. Dacosta does not challenge his arrest but argues that the agency's failure to consider him for release on bond violates his rights.[2] By statute, a noncitizen detained under

---

[2] Mr. Dacosta invokes 8 U.S.C. § 1231, but that statute applies when a final order of removal is in effect, whereas Mr. Dacosta's removal proceedings are not yet final [8 at 1]. The court understands him to be claiming that there is no legal basis for his prolonged detention without an opportunity for bond. The court must give Mr. Dacosta's filings liberal construction because he is proceeding without the benefit of counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

§ 1226 may be released by the Attorney General (subject to certain statutory limitations that no one argues apply here), or he may be detained pending a decision on whether he will be removed from the United States. See 8 U.S.C. §§ 1226(a), (c). The court observes that our high court likewise has recognized the permissive nature of this language. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526-27 (2021); *Jennings*, 583 U.S. at 306.

The Attorney General has delegated her discretion by regulation—first, to specified immigration officers who may "release an alien not described in [§ 1226(c)(1) (regarding criminal aliens)], under [bond or conditional parole]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). That is called an initial custody determination. After that initial custody determination, a noncitizen may apply to an immigration judge for a custody redetermination, and the immigration judge is authorized to exercise the authority in § 1226 "to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19 (detailing procedures for custody or bond redeterminations by an immigration judge). When a noncitizen files this motion, an immigration judge, under immigration court rules, must "in general" schedule a "hearing for the earliest possible date," though in "limited circumstances" the immigration judge may rule on a bond redetermination request without a hearing. Immig. Ct. Practice Manual § 9.3(d). A noncitizen may appeal a decision relating to bond and custody determinations to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3).

The court has oft said, and perhaps by now has said in ruling on nearly every habeas corpus petition of many immigration matters that have come before it—the parties, both noncitizens and the government alike, must comply with the laws as they are written and as they must work within the demands of constitutional due process. *See, e.g., Zadvydas*, 533 U.S. at 701; *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). The government has predetermined the procedures that apply to noncitizens who are arrested and detained under § 1226, and due process requires merely that they be fairly given, not taken away. *See Accardi*, 347 U.S. at 266-68; *see, e.g., Jideonwo v. I.N.S.*, 224 F.3d 692, 697 (7th Cir. 2000). The seeds of this understanding rest "in the long-settled principle that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency." *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991).

Mr. Dacosta is entitled only to process consistent with his classification under § 1226(a). The government has decided what that process is by regulation, and Mr. Dacosta gives no reason to believe that this process is undue or otherwise insufficient. The court will order no more and no less than what is expected of immigration officials by law. *See Accardi*, 347 U.S. at 268; *see also United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as this regulation [delegating Attorney General's discretion to a Special Prosecutor] remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.").

It seems Mr. Dacosta filed a motion for a custody redetermination, else the court would leave him to that task. He was denied a custody redetermination, either on the papers or via an individualized bond hearing, because the immigration judge found that he was

statutorily ineligible for bond under § 1225(b)(2). The good judge was following BIA guidance, *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), but erroneous guidance as it turns out. Although he presses for outright release, that exceeds what would be a reasonable remedy on this record. After all, "Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003); *see also Reno v. Flores*, 507 U.S. 292, 305-06 (1993). Though the Fifth Amendment entitles noncitizens to due process of law in deportation proceedings, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; *see also Wong Wing v. United State*s, 163 U.S. 228, 235 (1896). Instead, the court expects the government to follow its procedures laid out in the law. It is for the Attorney General, through the individuals delegated her authority, to decide whether release is warranted under the circumstances. *See Bolante v. Keisler*, 506 F.3d 618, 620-21 (7th Cir. 2007) (federal court's inherent authority to release individuals seeking habeas corpus relief is curtailed by statutory structure that applies in immigration cases).

Some courts, including some in this circuit, have ordered a bond hearing. Perhaps in these other matters the petitioner explained why a custody redetermination, under procedures that already exist, would not be fair and sufficient process, or perhaps the petitioner gave some other salient reason, or perhaps the parties merely treated a customary bond hearing as shorthand for a custody redetermination. But the statute doesn't require a hearing. The regulations (insofar as the parties have provided them to the court this time) don't require it. Even the rules that govern redetermination proceedings before the

6

immigration judge seem to afford that judge some ability to decide whether a hearing is necessary, though a custody redetermination must be given.

So, though the court agrees that detention under § 1226(a) without an opportunity to seek release under the procedures specified in the regulations—what the government has determined to be fair—would be unlawful, *see Accardi*, 347 U.S. at 265, the court leaves it to the Attorney General to follow that process, including to decide whether to release Mr. Varela Martinez or to proceed differently. Only if the Attorney General, acting through her designated officials, chooses to do nothing or fails to afford that process governing § 1226(a) proceedings must Mr. Dacosta be released. *See Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("Conditional writs enable habeas courts to give [authorities] time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release.").

Mr. Dacosta requests that the government be ordered to act within 14 days. An immigration judge conducts a custody redetermination already at the earliest possible date, so perhaps there is something prophylactic in this request for a precise timeline. At the same time, nothing in that strikes as too restrictive for a custody redetermination in light of the finding that Mr. Dacosta falls under § 1226, particularly when he has not been given this process to date based on the mistaken view that he falls under § 1225(b)(2). Even busy federal magistrate judges conduct detention hearings, given their heavy criminal and civil dockets, in less time. And that timeline fits well within other federal habeas corpus decisions.

For these reasons, the court:

(1) DENIES the petition [ECF 1], except to FIND that Solomon Dacosta must be classified under 8 U.S.C. § 1226(a) and to CONDITIONALLY ORDER the Warden to release Solomon Dacosta by **May 8, 2026**, only if he remains detained without a custody redetermination before an immigration judge in accordance with 8 U.S.C. § 1226(a) and corresponding regulations by May 8, 2026, at 12:00 pm ET;

(2) DIRECTS the clerk to email forthwith today a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure Solomon Dacosta's release.

(3) ORDERS the Warden to file proof of compliance with this order, either to indicate that the custody redetermination process has been completed or the petitioner released, by **May 8, 2026.**

SO ORDERED.

April 24, 2026                                  *s/ Damon R. Leichty*
                                                Judge, United States District Court